*(Circuit Court of Cook County. In Chancery.)*

### Glover

### vs.

### Couch, et al.

### Rice

### vs.

### Couch, et al.

### Couch

### vs.

### Glover, et al.

(May 26, 1889.)

1. RECEIVERS—APPOINTMENT OF—POWER OF COURT OF EQUITY. There is no doubt as to the power of a court of equity, pending litigation to take the possession of property from persons holding the legal title by appointing a receiver to hold and control the same until the controversy is finally decided.

2. SAME—PRINCIPLES GOVERNING. The power to appoint a receiver is one which the court exercises with reluctance and with great caution. It does so only to preserve the property for the benefit of the party who may be entitled to it.

3. EQUITY—MAXIM—PROOF OF FRAUD. Equity imputes good faith rather than bad faith. Fraud must not only be alleged; it must be proven.

4. EQUITY—FIDUCIARY RELATIONS—TERMINATION OF—CONSTRUCTIVE TRUST—FRAUD. Where the defendants have occupied a fiduciary relationship toward the complaining party and by reason thereof obtain his consent to the sale of certain of his property and the defendants buy in this property at the resultant sale, it is too late for them to claim that the fiduciary relationship has terminated and the property which they have obtained in this way, if still in their hands, will be impressed in a court of equity with a constructive trust in favor of the complaining party or his creditors. In such a case it is not necessary to show actual fraud; the law presumes fraud when the relationship is shown.

5. RECEIVER—APPOINTMENT ON MOTION—SUFFICIENCY OF EVIDENCE. On motion to appoint a receiver, it is not necessary for the complainant to show absolutely that he will ultimately prove his case; it is only necessary to show a strong probability that he will finally be entitled to a decree against the defendants.

Creditor's bill and cross bill. Motion to appoint receiver. Heard before Judge Murray F. Tuley. The facts are stated in the opinion.

TULEY, J.:—

The cross bill of James Couch contains a very voluminous history of the transactions out of which this litigation has arisen. The main facts alleged are that in 1875, James Couch was the lessee of the Tremont House in this city, holding a ten years' lease, which was afterwards, by agreement, to terminate in 1880, and also owned all the furniture therein, which cost some $200,000. That in the year 1875 the defendant, Dupee became his legal, and the defendant, Chumasero, his confidential financial adviser. That these two defendants having through these fiduciary relations acquired an undue influence and control over Couch, then about eighty years of age, devised early in 1879 a fraudulent scheme to obtain possession of the hotel and the ownership of the furniture for their own profit and advantage. That to that end they induced Couch to

agree to surrender his lease, then having over a year to run, to John A. Rice (also a defendant), and to consent to a new lease to Rice for five years, and to a sale of the furniture under the chattel mortgage securing a debt of $50,000 which was then upon it; the said Dupee and Chumasero to buy it in, sell one half to Rice and out of the profits of the hotel to pay whatever remained unpaid upon that part of the mortgage debt which it was expected to have extended; also to pay out of such profits the debts of said Couch, if any, which it might become necessary to discharge; and at the end of the five years to turn over the hotel and one half interest in the furniture to Couch. That for that purpose Couch furnished about $20,000 to be paid as purchase money on the sale that was to be had.

That the lease of Couch was surrendered, a new lease made to Rice for five years and the furniture sold under the chattel mortgage to the bookkeeper of the hotel for the amount of the mortgage debt. That a new mortgage was made for $40,000 and the balance, $15,502.92 paid in cash. That immediately Gregg the bookkeeper made a bill of sale to Dupee and Chumasero. That Rice contributed $3,000 of the cash paid, under a previous agreement made between Rice and Dupee and Chumasero, to the effect that he, Rice, should furnish that amount towards the purchase, and upon payment of one half the amount that it might be purchased for, he was to receive a bill of sale of such half; and also that the furniture if purchased, should remain in the hotel and the net profits of the hotel should be divided one half to Rice and one quarter to each Dupee and Chumasero.

The tripartite agreement also in substance provided that if the furniture should not be purchased at the sale, Rice should be assisted by the other parties to buy new furniture to take the place of the old. It also contained certain provisions for the board of Couch and family during the term of the lease and the payment to Couch of $25.00 per week for his services.

That large profits have been made since then, January,

1879, by which not only has the $40,000 been paid, but many thousands of dollars besides received, which Rice, Dupee and Chumasero have appropriated to their own use, and now deny that Couch has any interest in the furniture or in the profits of the hotel or that any such agreement as alleged by Couch was ever made.

The cross bill and the creditors' bills seek to have the sale of the furniture declared void and for an accounting. The allegations of the cross bill would probably if sustained, justify a decree that the defendants, Rice, Dupee and Chumasero held as trustees and are liable to account as such.

The defendants deny substantially all the allegations of the complainants, particularly and in detail all charges of fraud, Dupee and Chumasero in substance alleging that Couch was insolvent, that it was impossible for Couch to get an extension as to his debts, or to continue business, that it was only a question as to which creditors should get a preference as to the small amount of assets that Couch had in his control. That they were creditors—Dupee as a member of his firm of Hitchcock, Dupee and Judah, to the amount of $5,275, and Chumasero to the amount of $5,000—and that all moneys, notes, etc., turned over to them was in payment of their debts and insufficient to pay the same. Also that their fiducary relations to Couch having ceased, they had as much if not a better right to a preference than any other creditor, and as to the purchase of the furniture that they bought in good faith at a public sale and had as much right to buy as any other person. That they, being instrumental in obtaining the loan of $50,000 to be made to Couch, were under a moral obligation to see that the money should be made on the mortgage sale.

The defendants deny any agreement with Couch or that any trust relations exist now or did exist when the lease or furniture was acquired, and deny that the same were acquired for the benefit of Couch or his creditors, or with any such understanding or agreement.

The legal title to the lease is in John A. Rice and the legal

title to the furniture is as to one half in Rice and the other half in Dupee and Chumasero.

Couch claims to be the equitable owner of the lease and of the whole or at least one half of the furniture while the creditors of Couch claim that they have the right to have the furniture and the profits received by Dupee and Chumasero applied in satisfaction of their debts.

A receiver of the lease and furniture is moved for as against defendants, Rice, Dupee and Chumasero.

While there is no doubt as to the power of the court pending litigation to take the possession of property from persons in whom the legal title is vested, by appointing a receiver to hold and control the same until the controversy concerning it is finally determined, yet the power is one the court exercises with reluctance, and with great caution. It does so only to preserve the property for the benefit of the party who may be found entitled to it.

Feeling the grave responsibility cast upon the court by this motion for the exercise of this power, I have carefully read over the evidence submitted and have reached a conclusion only after mature reflection. I shall not comment upon the evidence submitted. As there must hereafter be a final hearing of the cause, it would not be proper for me, on this motion, to review the evidence. I shall therefore announce my conclusions so far only as I deem necessary for the decision of this motion.

I have not been able to reach the conclusion that there is a probability that the complainants will ultimately be entitled to a decree as against the defendant, John A. Rice.

If the complainants succeed ultimately in establishing the fact that there was a fraudulent scheme or conspiracy on the part of Dupee and Chumasero as alleged in the bills of complaint, the evidence now produced fails to satisfy me that Rice was a party thereto or that he acted with knowledge of any such scheme or conspiracy.

He occupied no fiduciary relation to Couch, and in making

the contract which he did with Dupee and Chumasero, I am not now prepared to say that he acted with the intent to defraud Mr. Couch or to aid the other defendants to defraud either Couch or his creditors. Equity imputes good faith rather than bad faith. Fraud must not only be alleged but it must be proven as against the defendant Rice.

As to the defendants Dupee and Chumasero, I do not deem it necessary at this time to express any opinion as to whether the proofs sustain or fail to sustain the charges of fraud and fraudulent conspiracy set out in the bills of complaint.

Nor is it necessary to now decide whether the evidence shows them to be in possession of the property upon the express trusts of the agreement alleged to have been made with Couch, or as trustees *ex maleficio* by reason of an alleged undue influence and control over James Couch, or by reason of having used the alleged agreement to buy in and hold the property as a means to carry out their preconceived intention to obtain the legal title and defraud both Couch and his creditors as alleged in Couch's bill of complaint.

I deem is sufficient to say that in my opinion the evidence tends strongly to prove that at the time when Dupee and Chumasero conceived and had partly consummated their scheme of having a chattel mortgage sale made of the furniture and buying it in, in their own name and for their own use and benefit, and of having an agreement or understanding with Rice to the effect that he, Rice, should furnish a part of the purchase money and have an interest therein, that the same when purchased should remain in use in the hotel for the period of the lease obtained or about to be obtained by Rice, they, Dupee and Chumasero, to receive one half the net profits of the hotel during such lease—they occupied such fiduciary relations towards Couch, and had acquired such influence over him by reason of such relations that equity will impress a constructive trust upon the property purchased and the profits realized therefrom in favor of Couch as the party

beneficially entitled thereto. It was too late for Dupee and Chumasero to terminate those relations and avoid the effects of their having existed between the parties.

I believe this would be the case whether the defendants, Dupee and Chumasero intended any fraud or not.

While it is true that in some cases persons occupying fiduciary relations may contract with the *cestui que use*, as to the property connected with such relations or may under certain circumstances beome the owners thereof; yet I am of the opinion from the evidence presented, that considering the peculiar circumstances of this case, the embarrassed condition of Couch's matters, his extreme old age, the great influence and control which these parties had obtained over him, the intimate and close trust and confidential relations existing between them and Couch, there is a strong probability that complainant Couch will be entitled to a decree—that as against him they cannot hold, and that it would be unconscientious to permit them to retain the property purchased or the profits realized therefrom.

Being of this opinion, the property being of great value with large profits accruing therefrom and Dupee and Chumasero claiming to own the same in their own right, I hold that a receiver should be appointed as to their undivided one half interest in the furniture and as to the profits arising under the contract with Rice in order that the same may be preserved for the party that shall ultimately be found entitled thereto.